HARRON COMMUNICATIONS CORPORATION *vs.* TOWN OF
BOURNE & another.[1]

No. 94-P-1817.

Barnstable. October 10, 1995. - February 22, 1996.

Present: WARNER, C.J., DREBEN, & IRELAND, JJ.

Further appellate review granted, 422 Mass. 1110 (1996).

*Taxation,* Personal property tax: abatement, Cable television system, Asses-
sors, Appellate Tax Board: jurisdiction, Void tax.

A taxpayer's action brought against a town's board of assessors under
G. L. c. 231A for declaratory and injunctive relief was barred by the
plaintiff's failure to pursue statutory remedies before the Appellate Tax
Board under G. L. c. 59, § 64, for the abatement of excessive taxes.
[86-88]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 22, 1993.

The case was heard by *John M. Xifaras, J.,* on motions for
summary judgment.

*Robert S. Troy & Joan M. LeGraw* for the defendants.

*Lois M. Farmer* for the plaintiff.

IRELAND, J. The defendants in this action appeal from a
Superior Court judgment declaring that the board of asses-
sors of the town of Bourne lacked jurisdiction to assess taxes
on certain personal property· of the plaintiff located wholly
within the town of Sandwich and declaring null and void the
assessment of that property. The defendants argue that the
action under G. L. c. 231A for declaratory and injunctive
relief was barred by the plaintiff's failure to pursue available
statutory remedies under G. L. c. 59, § 64, for the abatement
of excessive taxes by the Appellate Tax Board. We agree with
the assessors and, with great reluctance, we reverse the judg-
ment.

---

[1]The board of assessors of the town of Bourne.

*Facts.* The plaintiff taxpayer, Harron Communications Corporation (Harron), is a foreign corporation (G. L. c. 181, § 1) registered to conduct business in the Commonwealth. G. L. c. 181, § 4. Harron is the cable television provider for the towns of Bourne and Sandwich and maintains personal property in each of those towns. Its local business address is 49 Herring Pond Road in the Buzzard's Bay section of Bourne. In March, 1992, pursuant to G. L. c. 59, § 29, and the town of Bourne's local filing requirements, Harron sent to the assessors four separate State Tax Forms # 2 listing personal property subject to taxation for the fiscal year 1993. Each return is plainly captioned at the top with the name of one of the four separate villages or water districts within the town of Bourne. Each one lists Harron's taxable personal property located within the particular village or water district and also includes the purchase price thereof.

By mistake, Harron also mailed to the assessors the form that it had intended to file with the Sandwich board of assessors for taxable property located within that town. The word "Sandwich" appears clearly and prominently at the top of the return. The value of taxable personal property listed on the four returns correctly sent to the assessors for the Bourne water districts is as follows: (1) Bourne water district — $816,004; (2) Buzzard's Bay water district — $792,529; (3) North Sagamore water district — $422,779; (4) South Sagamore water district — $102,978. The Sandwich form inadvertently sent to the Bourne assessors lists taxable personal property in Sandwich valued at $2,958,815 — substantially more than the total of the values listed on the four other forms.

Harron did not discover its mistake until sometime in July, 1992, when a representative from the Sandwich board of assessors' office telephoned Harron inquiring into the whereabouts of the Sandwich return. Harron then sent the Sandwich board of assessors a duplicate copy of the Sandwich form it had inadvertently sent to the Bourne board. Subsequently, Sandwich issued a tax bill for $42,164 for the property listed on that form, and Harron paid the bill.

On December 30, 1992, the town of Bourne issued its tax bills for fiscal year 1993. Harron received a bill or bills for the four Bourne water districts based on a valuation of approximately $2,133,000, which it paid. Harron also received a separate tax bill for $33,967 for personal property valued by

the assessors at $2,958,815 — identical to the figure Harron had included on the Sandwich return.

Harron protested to the assessors in early January, 1993, but was told that, because the tax bill had already been issued, it would have to apply formally within thirty days of issuance for an abatement. Harron's application, dated January 18, 1993, makes clear reference to the tax bill with the contested $2,958,815 valuation. The following explanation for the application appears at the bottom of the form: "Personal property tax form for [t]own of Sandwich was accidentally mailed to [t]own of Bourne. This in turn generated *an additional tax bill*" (emphasis supplied).

One might reasonably have supposed that the problem would have been quickly and quietly corrected at this point. Not so. Inexplicably, the application for abatement was denied. The written notice from the assessors contains no explanation or reason for the adverse decision. As a post hoc justification for their action, the assessors (through the affidavit of the town's principal assessor filed in the Superior Court in connection with this case) claimed that, in valuing Harron's personal property in Bourne, they were entitled to rely on *all* of Harron's submissions (including the mistaken one for Sandwich) and, further, that the total $5,093,105 reported value on those forms was not significantly out of line with that of $4,356,000 reported on another totally unrelated form (listing assets for the year ending December 31, 1991) that Harron had previously submitted to the Bourne board of selectmen pursuant to its franchise agreement with the town. The assessors also maintained that, because Harron listed its local business address in Bourne in the space on each form asking for the location of the property, they were entitled to conclude that *all* of the listed property, in fact, was physically situated there.

On April 17, 1993, Harron's counsel wrote to the assessors urging resolution of the matter. Through town counsel, the assessors responded by letter dated May 17, 1993, that "[t]he [t]own relied on the information supplied by [Harron]" and that "Harron's abatement application admits culpability for the information reflected in Bourne's bill." The assessors stated they would be "happy to accept corrections to [the order of list] form in subsequent years," but they again refused to abate the 1993 taxes or to take any other remedial action

for that fiscal year. Five weeks later, on June 24, 1993, the assessors sent Harron yet another tax bill — this one a preliminary tax bill for fiscal year 1994 that was also based on the fiscal year 1993 Sandwich return.

At this juncture, Harron took a fateful (and, as it turns out, a fatal) turn. Rather than appeal the assessors' denial of the abatement application to the Appellate Tax Board pursuant to G. L. c. 59, § 64, Harron, figuring that the assessment by the Bourne board of assessors of property located entirely in another town was plainly beyond their legal authority and, hence, void, sought declaratory and injunctive relief to that effect from the Superior Court pursuant to G. L. c. 231A. Harron's verified amended complaint is dated July 1, 1993.

On cross motions for summary judgment, Harron prevailed. The motion judge declared that the assessors lacked jurisdiction to tax property located entirely in another town and that the tax assessment was null and void. On appeal, the defendants concede that, but for the jurisdictional point here raised, the judge's declarations are essentially correct. They argue that the action for declaratory relief was barred, however, because no special considerations existed to warrant departure from the statutory procedure for abatement, which would have provided an adequate remedy. We agree and are therefore constrained to reverse the judgment.

*Discussion.* We begin with the familiar principle that, in tax cases, where statutory remedies exist, no relief is available under G. L. c. 231A absent special circumstances. *Nearis* v. *Gloucester*, 357 Mass. 203, 205, cert. denied, 400 U.S. 918 (1970). See *Second Church in Dorchester* v. *Boston*, 343 Mass. 477, 479 (1962); *Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 326 (1964); *Sydney* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 289, 294-295 (1976); *D'Errico* v. *Assessors of Woburn*, 384 Mass. 301, 306 (1981); *Curran* v. *Commissioner of Rev.*, 23 Mass. App. Ct. 965, 965 (1987). For an excessive tax, the exclusive remedy is application for abatement and petition to the Appellate Tax Board. *Central Natl. Bank* v. *Lynn*, 259 Mass. 1, 6-7 (1927), *S.C.*, 266 Mass. 145, cert. denied, 280 U.S. 516 (1929). *Norwood* v. *Norwood Civic Assn.*, 340 Mass. 518, 523 (1960). *Sears, Roebuck & Co.* v. *Somerville*, 363 Mass. 756, 757-759 (1973). *Boston* v. *Second Realty Corp.*, 9 Mass. App. Ct. 282, 284 (1980). *Curran* v. *Commissioner of Rev.*, 23 Mass. App. Ct. at 965. *Tax Collec-*

*tor of Braintree* v. *J.G. Grant & Sons,* 26 Mass. App. Ct. 731, 734 (1989).

Where a tax is wholly void and not merely excessive, the taxpayer may either apply for an abatement and, if denied, petition the Appellate Tax Board under G. L. c. 59, § 64, or it may pay the tax under protest and, within three months after payment, commence an action under G. L. c. 60, § 98, to recover the amount paid. *Norwood* v. *Norwood Civic Assn.,* 340 Mass. at 523. See *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. at 757-758; *Tax Collector of Braintree* v. *J.G. Grant & Sons,* 26 Mass. App. Ct. at 735. The latter remedy has been characterized as an "action in contract," with a six-year general statute of limitations, provided that the action is also commenced within three months of payment of the disputed taxes. See *Second Church in Dorchester* v. *Boston,* 343 Mass. at 478; Nichols, Taxation in Massachusetts 446 (3d ed. 1938).

The remedy under G. L. c. 60, § 98, if available, would afford Harron a route out of its current predicament. However, relief under this section is confined to instances where the tax is wholly void and not merely excessive. *Central Natl. Bank* v. *Lynn,* 259 Mass. at 6-7. *Hairenik Assn., Inc.* v. *Boston,* 313 Mass. 274, 278 (1943). *Norwood* v. *Norwood Civic Assn.,* 340 Mass. at 523-524. *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. at 757-758. A wholly void tax on personal property occurs only where the taxpayer has no other personal property in the taxing jurisdiction that is legitimately subject to taxation. *Harrington* v. *Glidden,* 179 Mass. 486, 491-492 (1901), aff'd, 189 U.S. 255 (1903). See also Nichols, *supra* at 446-447, and cases cited. If, on the other hand, a taxpayer maintains taxable property within the jurisdiction, the tax is merely excessive, even though it mistakenly includes property located without the jurisdiction. *Norwood* v. *Norwood Civic Assn.,* 340 Mass. at 523. It is undisputed that Harron owns and maintains personal property in Bourne that was properly taxed and on which it paid the tax bill. Hence, the disputed tax must be characterized as excessive — not wholly void — and Harron's exclusive remedy was through abatement, a route it failed to pursue within prescribed time limits. The crucial distinction between void and excessive taxes, which we are constrained by the case law to make, seems to lack vitality here, where Harron received a discrete and separate tax bill based entirely on an assessment of personal property

located completely within another jurisdiction and having nothing whatever to do with its personal property in Bourne. In this situation, the rationale for the distinction, see, e.g., *Lincoln* v. *Worcester,* 8 Cush. 55, 66-67 (1851), cited in *Harrington* v. *Glidden,* 179 Mass. at 493, seems not to apply. Harron's failure to note that distinction in these circumstances was understandable, if ultimately mistaken.

"Should the administrative remedy [of abatement] be 'seriously inadequate,' or the case involve novel questions, repetitive problems, or the public interest, resort to the Superior Court [through an action for declaratory relief] has been grudgingly countenanced." *Tax Collector of Braintree* v. *J.G. Grant & Sons,* 26 Mass. App. Ct. at 734. See also *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 148-149 (1964); *Sydney* v. *Commissioner of Corps. & Taxn.,* 371 Mass. at 294-295. This dispute affects Harron alone; it does not affect the public interest. Nor does it present novel questions. Compare *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 237-238 (1961), where the court held under G. L. c. 231A that an entire citywide proposed assessment scheme was wholly illegal and void. Most importantly, Harron's available remedy before the Appellate Tax Board was not "seriously inadequate." See *Sydney* v. *Commissioner of Corps. & Taxn.,* 371 Mass. at 294; *D'Errico* v. *Assessors of Woburn,* 384 Mass. at 309. In his April 17, 1993, letter to the assessors, Harron's lawyer wrote that it was "beyond [his] comprehension" that the application for abatement had been denied. It is beyond ours as well; nonetheless, we remain convinced that the problem could have been resolved at the Appellate Tax Board and, therefore, declaratory relief was unwarranted in this instance.

We realize that the result we are constrained to reach seems particularly harsh. Based on the record we have before us, we find it difficult to understand how someone from the assessors' office managed to integrate into Bourne's tax rolls a form of list plainly captioned with the word "Sandwich," especially since forms of list apparently were categorized according to the appropriate village or water district in Bourne.

We are also troubled by the fact that despite the error having been brought to the town's attention, the town has persisted in refusing to correct the error. Not only did the assessors deny the abatement without explanation, but, a mere

five weeks after the assessors' counsel gave assurances that the assessors would be "happy to accept corrections" for subsequent tax years, their office issued a preliminary tax bill for 1994 that was derived entirely from the contested Sandwich order of list.

The assessors now admit that the "specific property listed on the form of list marked Sandwich" was located in Sandwich, not Bourne, and that they did not have jurisdiction to tax it. Given these circumstances, we encourage the assessors to act in good faith and to attempt to settle the matter in a fair and equitable manner.

The judgment of the Superior Court is vacated, and judgment is to enter dismissing the complaint.

*So ordered.*