JERRY DISTEFANO & others[1,2] vs. COMMISSIONER OF REVENUE.

Suffolk. December 3, 1984. — March 25, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Declaratory Relief. Administrative Law*, Exhaustion of remedies. *Practice, Civil*, Summary judgment. *Taxation*, Sales and use tax, Exemption. *Words*, "Restaurants," "Meals."

A judge did not abuse his discretion in entertaining an action for declaratory judgment brought by taxpayers in the business of supplying prepared food products to independent canteen truck and cafeteria operators against the Commissioner of Revenue, who had issued subpoenas to compel the taxpayers to produce corporate records pertaining to their sales tax liabilities, even though the taxpayers had brought the action without exhausting their administrative remedies under G. L. c. 62C. [319-321]

In an action against the Commissioner of Revenue by industrial commissaries supplying prepared food products to independent canteen truck and cafeteria operators, there were sufficient undisputed facts for the judge to order partial summary judgment on the question whether sales of food products by the commissaries to the canteen truck and cafeteria operators were taxable under G. L. c. 64H, § 6 (*h*). [322-323]

Sales of prepared food products by industrial commissaries to independent canteen truck and cafeteria operators were not sales of "meals" by "restaurants" and thus were not taxable under G. L. c. 64H, § 6 (*h*). [324-327]

CIVIL ACTION commenced in the Superior Court Department on December 4, 1979.

A motion for summary judgment was heard by *Edward W. Farrell*, J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

[1] Kustom Katerers, Inc., and Joseph's Industrial Catering Corp.

[2] Originally, there were seven plaintiffs. Jerry DiStefano, Micco, Inc., Mobile Catering Corporation of America, Industrial Catering Corp., and Mr. Snack, Inc., were five of the original plaintiffs. Only the petition of Kustom and Joseph's for declaratory relief is considered on this appeal.

*Stephen S. Ostrach,* Assistant Attorney General, for the Commissioner of Revenue.

*William J. Rooney, Jr.,* for the taxpayers.

LYNCH, J. The Commissioner of Revenue (Commissioner) appeals from a judgment of the Superior Court which declares that the taxpayers, Kustom Katerers, Inc. (Kustom), and Joseph's Industrial Catering Corp. (Joseph's), are not subject to tax under G. L. c. 64H in the conduct of their industrial commissary operations. The judge ruled, after a hearing on the taxpayers' motion for partial summary judgment, that "in the conduct of their industrial commissary operations [the taxpayers] do not operate 'restaurants,' do not sell 'meals' and therefore sales of food products by Kustom and Joseph's are not subject to tax under M. G. L. c. 64H nor under repealed M. G. L. c. 64B."[3] We granted the Commissioner's application for direct appellate review.

The Commissioner contends first that the Superior Court judge lacked subject matter jurisdiction over the taxpayers' claim because of their failure to exhaust their administrative remedies. The Commissioner also contends that the judge erred in granting partial summary judgment, because there is a factual dispute between the parties. Finally, the Commissioner argues that the judge erred in concluding that the taxpayers' sales are exempt from tax under G. L. c. 64H because they are not restaurants that sell meals. We conclude that the judge did not abuse his discretion in exercising jurisdiction over the petition for declaratory relief. We hold, furthermore, that the judge was not in error in granting partial summary judgment and in ruling that in their industrial commissary operations the taxpayers are not restaurants and are therefore exempt from the sales tax under G. L. c. 64H.

---

[3] Prior to January 1, 1978, an excise tax was imposed on "the amount charged for all meals . . . wherever furnished within the Commonwealth." G. L. c. 64B, § 2, as amended by St. 1953, c. 654, § 77, repealed, St. 1977, c. 363A, § 43, effective January 1, 1978. Under G. L. c. 64H, §§ 1 (13), 1 (15), 2, and 6 (*h*), effective since January 1, 1978, "meals" are taxable under the sales tax law when sold at retail.

It would appear from the affidavits filed by the parties that the following facts are not in dispute. The taxpayers are industrial commissaries who sell supplies in quantity to independent canteen truck drivers and cafeterias.[4] They allege that, although there are some difference among the industrial commissaries, Joseph's and Kustom are typical of the industry.[5] They sell some food products in prepared form, including soft drinks, potato chips, bakery goods, and other snacks. Other food products are prepared on their premises and include, for example, sandwiches, soup, and submarine sandwiches. All the food that they sell is cold, packaged, and sold in large orders. None of the food sold is consumed on their premises.[6] In many instances, the food must be heated by the retailer before consumption.

The canteen truck drivers who purchase supplies from Joseph's and Kustom generally have daily standing orders for sandwiches, soup, soda, and snacks. The drivers purchase the supplies in the taxpayers' warehouses and pay either with cash or on credit. Joseph's and Kustom do not demand that their customers provide certificates indicating that the supplies are purchased for resale.[7] They contend that industrial commissaries in Massachusetts have not generally demanded resale certificates from their customers for the sale of food products. Furthermore, it is alleged that, if Joseph's and Kustom required that the canteen truck drivers provide resale certificates, the drivers would not continue to purchase supplies from them.

---

[4] Joseph's makes approximately 97% of its sales to independent canteen truck drivers and approximately 3% to operators of cafeterias. Kustom makes approximately 50% of its sales to independent canteen truck drivers and 50% to operators of cafeterias.

[5] Some industrial commissaries also sell their supplies, in quantity, to independent snack bars and vending machine operators.

[6] Joseph's and Kustom do not have facilities for consuming food on the premises, aside from incidental facilities for their employees.

[7] An affidavit submitted on behalf of the Department of Revenue (department) indicates that at least three industrial commissaries have been obtaining resale certificates. It is unclear when they began this practice and whether they have required that all of their customers provide resale certificates.

Prior to initiation of this action, the Commissioner had issued subpoenas to compel these and similarly situated taxpayers to appear and produce records pertaining to their corporate liabilities under the Massachusetts sales and certain other taxes. The taxpayers[8] then brought suit to enjoin enforcement of the subpoenas, and for declaratory relief that they are not subject to tax under G. L. c. 64H. *Commissioner of Revenue* v. *Boback*, 12 Mass. App. Ct. 602, 603 n.3 (1981). The Commissioner filed applications in separate actions for enforcement of the subpoenas. In December, 1979, a judge in the Superior Court denied the taxpayers' application for a preliminary injunction and allowed the Commissioner's applications for enforcement of the subpoenas. *Id.* The Appeals Court reversed the Superior Court order on the ground that the subpoenas were not sufficiently specific to warrant judicial enforcement. *Id.* at 611. On June 28, 1983, two of the taxpayers, Joseph's and Kustom, moved for partial summary judgment on the claim requesting declaratory relief. On July 28, 1983, the parties stipulated to dismissal with prejudice of five counts of the taxpayers' complaint involving challenges to the department's subpoenas.[9] The Commissioner appeals from the judgment of the Superior Court granting declaratory relief.

The Commissioner contends that Joseph's and Kustom are restaurants in the operation of their industrial commissary businesses, so that their sale of food products is subject to sales tax under G. L. c. 64H, unless they prove that the food products are purchased for resale under G. L. c. 64H, § 8. The Commissioner posits that Joseph's and Kustom can meet this burden of proving resale if they obtain resale certificates from their customers, or if they maintain records of each sale, giving the name of the purchaser and information sufficient to establish that the food products were for resale. The Superior Court judge ruled that the taxpayers are not restaurants in the operation of their industrial commissary businesses. He also

[8] See note 2, *supra*.

[9] Count II, which involves a claim that the industrial commissaries' sales are not "at retail," is still before the Superior Court.

concluded, however, that they are subject to tax under G. L. c. 64H for the sales made by their own canteen truck businesses and for the sale of goods other than food products.

1. *Propriety of declaratory relief.* The Commissioner argues that the judge abused his discretion in providing declaratory relief because the taxpayers failed to exhaust their administrative remedies under G. L. c. 62C. General Laws c. 62C, § 41, inserted by St. 1976, c. 415, § 22, provides that "[t]he remedies provided by [the abatement procedure in §§ 37-40] shall be exclusive, whether or not the tax is wholly illegal." We do not interpret this section as precluding all other forms of relief.[10] "We have held repeatedly, in the tax field, that a declaratory action is not ousted merely by the fact that the taxpayer has an administrative path to relief. Rather we have taken the view that the judge in such a case may still exercise a discretion as to whether the action should be entertained." *S.J. Groves & Sons* v. *State Tax Comm'n*, 372 Mass. 140, 142 (1977), quoting *Sydney* v. *Commissioner of Corps. & Taxation*, 371 Mass. 289, 293 (1976). *Madden* v. *State Tax Comm'n*, 333 Mass. 734, 736-737 (1956). *Meenes* v. *Goldberg*, 331 Mass. 688, 690-692 (1954) (holding that the statutory language concerning exclusive remedies did not prevent courts from granting declaratory relief in certain circumstances).

The taxpayers brought this action after the Commissioner had issued subpoenas compelling them to produce certain corporate records concerning their liabilities for the sales tax. Prior to this action, however, the taxpayers had not been assessed an excise or sales tax on their industrial commissary operations. The statutory procedure for abatement and appeal was, therefore, not yet available to them as a means to determine whether they are taxable as restaurants under G. L. c. 64H. Their two alternatives at the time of commencing this suit were either to wait until a tax was assessed against them[11]

---

[10] General Laws c. 62C, § 41, contains provisions similar to those in former G. L. c. 62, § 48, repealed by St. 1976, c. 415, § 100.

[11] Joseph's and Kustom contend that if they are assessed a tax of 5% on the gross sales of their industrial commissary operations for each of the last

and then file for an abatement under G. L. c. 62C, § 37, or to sue for declaratory relief under G. L. c. 231A. We conclude, based on the record before us, that the judge did not abuse his discretion in finding that he had jurisdiction to provide declaratory relief.

We are generally reluctant to waive the requirement that the taxpayer exhaust administrative remedies before suing for declaratory relief. "Unless the administrative remedy is 'seriously inadequate' under all the conditions of the case, it should not be displaced by an action for a declaration . . . , and care must be taken lest allowance of a judicial substitute disrupt unduly the orderly collection of tax. . . . Favorable to maintenance of a declaratory action . . . is the circumstance that the issue is important or novel or recurrent; that the decision will have public significance, affecting the interests of many besides the immediate litigants; or that the case reduces to an issue of law without dispute as to the facts." *Sydney, supra* at 294-295 (citations omitted). Accord *S.J. Groves & Sons, supra* at 142; *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 450 (1973).

Although the record in the instant case does not provide a strong basis for declaratory relief, we conclude that there is sufficient justification for upholding the judge's exercise of jurisdiction. The taxpayers in this case have not yet been assessed an excise or sales tax on their sales to canteen and cafeteria operators. Therefore, at the time they commenced this action, the abatement and appeal procedure provided for in G. L. c. 62C, §§ 37-40, was not available to them as a means to challenge the taxability of these sales under G. L. c. 64H. The outcome of this decision, furthermore, has potentially broad-reaching implications for all industrial commissaries in an industry whose sales are in excess of $20 million a year.[12] Resolu-

three years, they could not survive payment of the assessment. They state, furthermore, that the industrial commissary industry as a whole, which grosses over $20 million a year, would not survive a potential assessment of $3 million plus interest and penalties. The statute of limitations for collection of the sales tax is three years. See G. L. c. 62C, § 26 (*b*).

[12] This figure is taken from the taxpayers' affidavits. It is not disputed by the department in its affidavit or in the Commissioner's brief.

tion of the issue raised here will affect the interests of taxpayers other than the two in this case. The department has not previously attempted to tax the sales of industrial commissaries to canteen operators. It now argues that the taxpayers fall into the category of "restaurants" taxable under G. L. c. 64H. We conclude that the issue is sufficiently novel and important to warrant declaratory relief. Furthermore, it primarily involves a question of law, so that it is susceptible of resolution without significant dispute as to the facts.[13] Although we will not decline to address the merits of the taxpayers' petition, it should be noted that the Appellate Tax Board is the preferred forum for resolving questions of this type because of its special expertise in tax matters.

The Commissioner relies upon our decision in *General Dynamics Corp.* v. *Assessors of Quincy*, 388 Mass. 24 (1983). Although neither party in that case challenged the propriety of a local tax assessment case coming to this court through the Superior Court rather than the Appellate Tax Board, we noted "the significance of this departure from the usual practice of having a decision by the board on a challenge to local assessments," *id.* at 27, and concluded that "we look with disfavor on the Superior Court's exercising jurisdiction over cases of this character." *Id.* at 30. *General Dynamics* provides persuasive reasons for requiring that tax cases be brought first before the Appellate Tax Board, but we conclude that it does not require exhaustion of administrative remedies in this case. Here, the tax issue involves interpretation of the sales tax law; its resolution will affect industrial commissaries across the State and will have "public significance, affecting persons other than the litigants." *Id.* at 28. Unlike *General Dynamics*, it does not involve merely a local tax assessment levied against a single property owner. Furthermore, there is no significant dispute as to the facts in this case, so that the case does reduce largely "to an issue of law without dispute as to the facts." *Sydney* v. *Commissioner of Corps. & Taxation*, 371 Mass. 289, 295 (1976).

---

[13] See discussion of propriety of partial summary judgment, *infra.*

2. *Partial summary judgment.* The judge granted partial summary judgment on the basis of affidavits filed by the taxpayers and the department. A party "is entitled to summary judgment if he demonstrates (1) that there is no genuine issue as to any material fact, and (2) that he is entitled to judgment as matter of law." *Santana* v. *Registrars of Voters of Worcester*, 390 Mass. 353, 356 (1983), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The Commissioner argues that the judge erred in granting partial summary judgment because there is a dispute as to whether the taxpayers are typical of the industry and because there is a dispute and insufficient evidence as to the nature of the taxpayers' operations. We conclude that the Commissioner has failed to raise a "genuine issue as to any material fact," and hold that the judge did not err in granting partial summary judgment.

In granting partial summary judgment, the judge ruled that, to the extent that the industrial commissaries sell food products in quantity to independent canteen truck operators and cafeteria operators for resale to the general public, they do not operate "restaurants" and do not sell "meals," so that their sales of food products are not taxable under the applicable provision of G. L. c. 64. The judge ruled, furthermore, that Kustom is taxable as a restaurant for sales made in its canteen truck business. He added that the finding does not suggest that the taxpayers would be similarly exempt from tax under G. L. c. 64H for the sale of goods other than food products or for any snack bar operations which may begin in the future. The judge made no finding as to what portion of the taxpayers' over-all sales is generated by the sale of food products in their industrial commissary businesses.

We are unable to discern any disputed question of material fact which would render unwarranted the judge's decision to grant partial summary judgment. The taxpayers presented affidavits of several officers and employees of industrial commissary businesses,[14] and the Commissioner presented one affidavit,

---

[14] These include affidavits of Edward C. Boback, vice president and general manager of Joseph's; Marie Condon, bookkeeper of Mr. Snack,

that of a corporation analyst in the department's audit bureau. The taxpayers' affidavits describe their businesses and, in part, certain attempts by the department to gather information about the taxpayers' customers. The affidavit of the department's analyst briefly describes the department's need for and efforts to obtain resale certificates from the industrial commissaries, and points out that differences exist among the businesses operated by industrial commissaries. The department's affidavit does not raise any genuine issue of material fact. Any difficulty which the department may have had in obtaining resale certificates is not an issue in this case.[15] Furthermore, whether the taxpayers also engage in retail operations whose food sales are taxable is not an issue in this case. At issue is merely whether the taxpayers are taxable as "restaurants" in their sales to canteen truck and cafeteria operators in the business of selling food or beverages. The judge properly reserved the question whether the taxpayers are taxable if they make retail sales of food, for example, in a snack bar. It is, moreover, unnecessary to determine at this juncture what percentage of the taxpayers' sales are to canteen truck operators and cafeteria owners who in turn resell the food. The affidavits are sufficiently specific for the judge to have determined whether, in their industrial commissary businesses, the taxpayers' sales of food products are taxable. There were sufficient undisputed facts for the judge to make this determination at the hearing on the motion for summary judgment.

---

Inc., one of the original seven plaintiffs; Joseph DePasquale, president of Medford Canteen, Inc.; Joseph Lunetta, president of Joseph's; and Al Fiorenza, president of Kustom.

[15] Unless the taxpayers are "restaurants" that sell "meals," they may not be required to procure resale certificates from purchasers in order to be exempt from the sales tax. *Commissioner of Revenue* v. *Boback,* 12 Mass. App. Ct. 602, 605-606 (1981). See G. L. c. 64H, § 8 (a), inserted by St. 1967, c. 757, § 1, which provides: "It shall be presumed that all gross receipts of a vendor from the sale of tangible personal property are from sales subject to tax until the contrary is established. The burden of proving that a sale of tangible personal property by any vendor is not a sale at retail shall be upon such vendor unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

3. *Taxability as "restaurants."* Under G. L. c. 64H, § 2, as amended by St. 1976, c. 415, § 74, an "excise" tax is "imposed upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of five per cent of the gross receipts of the vendor from all such sales of such property, except as otherwise provided in this chapter." Section 6 exempts certain types of sales from tax under § 2, including "[s]ales of food products for human consumption." G. L. c. 64H, § 6 (*h*). The term "food products" does not, however, include "meals," which are taxable and are defined as "any food or beverage, or both, *prepared for human consumption and provided by a restaurant,* where the food or beverage [ ] is intended for consumption on or off the restaurant premises, and includ[ing] food or beverages sold on a 'take out' or 'to go' basis, whether or not they are packaged or wrapped and whether or not they are taken from the premises of the restaurant" (emphasis added). *Id.*

General Laws c. 64H, § 6 (*h*), as amended by St. 1977, c. 363A, § 46, defines "[r]estaurant" as "any eating establishment where food, food products, or beverages are provided and for which a charge is made, including but not limited to, a cafe, lunch counter, private or social club, cocktail lounge, hotel dining room, catering business, tavern, diner, snack bar, dining room, vending machine, and any other place or establishment where food or beverages are provided, whether stationary or mobile, temporary or permanent; provided, however, that delicatessen, grocery, market or bakery stores shall not be considered eating establishments within the meaning of this chapter except for any part of such a store which engages, in the sale of dinners, luncheons, barbecued chicken, other than barbecued chicken sold whole and unsliced, sandwiches, snacks, pizzas, and other similar items which are commonly sold at snack bars, coffee shops or luncheon counters." Section 6 (*h*) then states that certain stores and vending machines are not considered "restaurants" or "eating establishments," and describes in detail certain "food or beverages sold by a restaurant for consumption off the restaurant premises [which] shall not be deemed to be a meal for the purposes of [G. L. c. 64H]."

The following, however, are not exempted from tax under G. L. c. 64H, § 6 (*h*): "Prepared meals, snacks, sandwiches, food platters, poultry, fish or meat items, or other food combinations, to the extent that such items are sold by a restaurant whose principal business is the preparation or sale of such items in such form as to be available for immediate consumption without further significant preparation, whether for on or off premise consumption . . . ."

The Commissioner contends that, in their industrial commissary operations, the taxpayers are "restaurants" that sell "meals," so that the sale of food products to canteen truck and cafeteria operators is taxable to the taxpayers. The taxpayers, however, contend that these sales of food products are tax exempt under § 6 (*h*), because they are not sales by "restaurants" that sell "meals." The judge below did not err in concluding that, in their industrial commissary operations, the taxpayers are not "restaurants" that sell "meals," so that they are not taxable on the sale of food products to canteen truck and cafeteria operators.

The Commissioner argues that the burden is on the taxpayers to prove exemption from the sales tax. We disagree. We have concluded in previous cases that the exemption provisions in G. L. c. 64H, § 6 (*m*), (*r*), and (*s*) "are not 'the type of exemption concerning which a special burden rests upon a taxpayer, claiming the benefit of the provision, to bring himself within its scope. . . . The subsections are merely part of the statutory definition of the types of sales and uses of tangible personal property which are to be employed in measuring the excises and of those which are not so to be used.' " *Greenfield Town Crier, Inc.* v. *Commissioner of Revenue,* 385 Mass. 692, 695 (1982), quoting *Wakefield Ready-Mixed Concrete Co.* v. *State Tax Comm'n,* 356 Mass. 8, 12 (1969). We have stated, furthermore, that "there is no requirement that this type of exemption be interpreted narrowly." *Greenfield Town Crier, Inc., supra* at 695, quoting *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation,* 358 Mass. 563, 569 (1971).

"There is no power to tax unless such authority is expressly conferred by statute, for it does not arise by implication, and

statutes granting the power are to be strictly construed." *Riesman* v. *Commissioner of Corps. & Taxation,* 326 Mass. 574, 575 (1950). "Taxing statutes are to be construed strictly against the taxing authority, and all doubts resolved in favor of the taxpayer." *Dennis* v. *Commissioner of Corps. & Taxation,* 340 Mass. 629, 631 (1960). See *Massachusetts Ass'n of Tobacco Distribs.* v. *State Tax Comm'n,* 354 Mass. 85, 89 (1968). *Bolster* v. *Commissioner of Corps. & Taxation,* 319 Mass. 81, 85 (1946). It is a "well established principle that ambiguities in tax statutes are to be resolved in favor of the taxpayer and that the right to tax is 'not to be extended by implication.'" *Boston Safe Deposit & Trust Co.* v. *State Tax Comm'n,* 346 Mass. 100, 105 (1963), quoting *Curtis* v. *Commissioner of Corps. & Taxation,* 340 Mass. 169, 173 (1959). The taxpayers' sales of food products to canteen truck and cafeteria operators are not taxable under G. L. c. 64H, § 2, unless the Commissioner meets his burden of showing that these sales fall within the definition of "meals" sold by "restaurants" under the applicable provision of G. L. c. 64.[16]

In reaching a determination whether the taxpayers are restaurants in their industrial commissary operations, we look first to the statutory language as "the principal source of insight into the legislative purpose." *State Bd. of Retirement* v. *Boston Retirement Bd.,* 391 Mass. 92, 94 (1984), quoting *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). The statute requires that, for the sale of food to be taxable, it must be provided in an "eating establishment." Clearly, in their industrial commissary operations, the taxpayers do not operate "eating establishment[s]" as that term is commonly understood. Neither are the products in question sold in a manner similar to the sales in any of the "eating establishment[s]" described in § 6 (*h*). The taxpayers' sales are made to a middleman, either canteen truck driver or cafeteria operator, who then sells the food products at retail to customers. The judge found that the taxpayers do not sell food products directly to retail customers for consumption. Furthermore, they do not maintain facili-

---

[16] See note 3, *supra* (comparing present and former meals tax provisions).

ties on their premises for food consumption, aside from incidental facilities for employees. Their sales facilities resemble warehouses where food products are sold in bulk at wholesale to customers who in turn sell the food, sometimes after further preparation, to the public. There is no suggestion in the statute that the taxpayers' facilities were intended to fall within the definition of "restaurant" under § 6 (h).[17]

The Commissioner contends that the legislative history of G. L. c. 64H, and letter rulings by the Commissioner of Revenue, No. 83-33 (April 22, 1983) and No. 83-45 (June 8, 1983), provide support for the argument that the taxpayers are "restaurants." The legislative history relied upon by the Commissioner shows no intent to tax as "meals provided by a restaurant" the sale of food to nonconsumers. The Commissioner's letter rulings, as reproduced in the record, apparently attempt to reverse a long-standing policy not to tax the sale of food products by industrial commissaries to canteen truck and cafeteria operators. The Commissioner would attempt to place the burden of proving exemption on the taxpayers by levying a tax on these sales unless resale certificates are produced. This is not consistent with legislative intent expressed in the statutory scheme embodied in G. L. c. 64H. Under § 6 (h), the sale of food products is specifically exempt from tax unless they are sold as a "meal" by a "restaurant." There would seem to be no obligation to produce a resale certificate under G. L. c. 64H, § 8 (a), unless the sale is not exempt and, therefore, is taxable.[18] The sales at issue in this case are not taxable.

*Judgment affirmed.*

---

[17] In spite of their use of the word "cater" in their corporate names, the taxpayers do not fall within the meaning of "caterer" for purposes of the sales tax laws. "A caterer is defined as one who provides provisions and service especially for entertainments at clubs, private houses, etc. . . . A caterer provides a full dinner with table linens, waitresses, silverware, glasses, dishes, etc., and sometimes wines and liquors. A caterer also 'sets up' and 'cleans up' the meal." *Pat's Super Market, Inc.* v. *Commissioner of Revenue*, 1 Mass. App. Tax Bd. Rep. 36, 40 (1981), vacated on other grounds, 387 Mass. 309 (1982). The Commissioner's argument that the taxpayers' use of the term "caterers" in their corporate names supports his contention that they are engaged in catering businesses is without merit.

[18] See note 15, *supra*.